

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
(ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1006
Re: A salary item listed in Senate
Bill No. 427, the General De-
partmental Appropriation Bill
passed at the Regular Session
of the 46th Legislature, does
not authorize a department head
to break down a salary item
listed therein for a particular
position and convert that posi-
tion into a part-time or half-
time position, except where he
is specifically authorized
therein so to do.

We acknowledge receipt of your letter of recent date
which reads as follows:

"I will thank you to advise this department
whether a department head would be authorized to
break down a budget salary item listed in Senate
Bill No. 427, the General Appropriations Bill
passed by the Regular Session of the Forty-sixth
Legislature, and make two half-time positions out
of the same."

The question submitted calls for our interpretation of
the above-mentioned Act passed at the regular session of
the Forty-sixth Legislature, known as the Departmental Ap-
propriation Act, making appropriation for the support and
maintenance of the executive and administrative departments
and agencies of the State Government for the two-year period,
beginning September 1, 1939, and ending August 31, 1941.

31

Hon. George H. Sheppard, Page #2.


We must first look to the provisions of this Act for
the answer to your question.  If, after doing so, there is
doubt as to the intention of the Legislature, we may then
construe or interpret it by certain well-known rules of
statutory construction; but if from the plain wording of
the Act there can be no doubt as to what the Legislature
intended, then there is no room for construction.  For in
39 Tex. Jur. p. 160 et seq., it is said:

"The general rule is that a court will not
assume to construe or interpret a statute if
there is no necessity for it to do so, that is,
if the statute is susceptible of but one construc-
tion.  On the contrary, it is settled by many
decisions that there is no room for construction
when the law is expressed in plain and unambiguous
language and its meaning is clear and obvious.
In such a case the law will be applied and enforc-
ed as it reads, regardless of its policy or pur-
pose, or the justice of its effect.  In other
words, a court is not authorized to indulge in
conjecture as to the intention of the Legislature,
or to look to the consequences of a particular
construction, unless the meaning is doubtful.
But of course the fact that an act is plain and
unambiguous in certain respects does not preclude
the construction if, in other respects, its mean-
ing is doubtful."

We have examined the Act and have reached the conclu-
sion that a proper answer may be made to your question with-
out the necessity of resorting to rules of construction.
However, it has been earnestly insisted by some who are
interested in obtaining an affirmative answer to the ques-
tion submitted that the Act does not specifically inhibit
the head of any department or other employing agency named
therein from employing two or more persons to work part-
time and pay them out of a specific appropriation made to
pay the salary of only one person, therefore, the Legis-
lature has left the question to the discretion of such
officials.  In deference to the wishes of those who so
contend, we have decided to review the Act and construe it
in the light of the legislative history of the subject for
the purpose of ascertaining the legislative intent, "the
essence of the law."  For the very "object of construction
is to ascertain and enforce the legislative intent, and not
to defeat, nullify or thwart it."  39 Tex. Jur. pp. 166,
167.

Hon. George H. Sheppard, Page #3.

In Article 10, Revised Statutes, the Legislature has prescribed certain rules for the construction of laws. Section 6 of said article reads:

"In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

The courts have frequently cited this statute as a command to be followed by them. Texas Bank & Trust Co. vs. Austin, 115 Tex. 201, 280 S. W. 161. In the case just cited, there is found a quotation taken from the opinion in the case of Montclair vs. Ramsdell, 107 U.S. 152, 27 L. ed. 431, which announces another important rule of construction, which is:

"It is the duty of the court to give effect to every clause and word of a statute, avoiding, if it may, any construction which implies that the Legislature was ignorant of the meaning of the language employed."

The foregoing, as well as all other established rules of construction, are to be applied by the Attorney General when he is called upon by a public official, whom it is his constitutional or statutory duty to advise, to construe or interpret a statute governing or appertaining to the official duties of that officer.

The Attorney General, like the courts, is not concerned with the policy, purpose or effect of the law. His duty is to give a definite statement of what he conceives to be the law, and when that duty is performed, his function ends.

Keeping in mind at all times what has heretofore been written, we will review the legislative history relating to the subject and examine the Act involved for the purpose of ascertaining the expressed or implied intent of the Legislature as to the question at hand.

In the general rider attached to the Departmental Appropriation Act, passed at the First Called Session of the Fortieth Legislature, p. 306, making an appropriation for the support and maintenance of the State Government for the

Hon. George H. Sheppard, Page #4.

two-year period beginning September 1, 1929, and ending
August 31, 1931, is found this provision:

> "Provided, however, that the head of any
> department of the State Government, or any Board
> or Commission of the State Government, may use
> part-time employees to fill any position provided
> for in this Act at a salary not to exceed more
> than one-half of the amount appropriated for
> such position."

We have read all general departmental appropriation bills
passed by the Legislature since 1877 and prior to 1927, and in
none of them do we find this or a similar provision. This
identical provision, or one substantially the same, is found
in all such subsequent appropriation bills, except the one
we are now considering. See Acts of the 3rd Called Session,
41st Legislature, p. 454; Acts of the Reg. Ses. 42nd Leg.,
p. 730; Acts of the Reg. Ses., 43rd Leg., p. 510; Acts of
the Reg. Ses., 44th Leg., p. 1157; Acts of the Reg. Ses.
45th Leg., p. 1489.

We do find in the Acts of 1915 a specific rider
to the appropriation made to the State Reclamation Depart-
ment to pay salaries of seven technical assistants which
reads as follows:

> "Provided, that the foregoing salaries of
> assistants, being maximum amounts, the State
> Reclamation Engineer, in his discretion, is here-
> by authorized to reduce the same; or to divide
> the maximum or reduce the salary of any one of
> the said assistants between two employees; or to
> abolish any one of the said positions, temporarily
> or otherwise, applying the salary thereof to
> the general allottment for the further prosecution
> of the authorized work of the department; and he
> is further authorized to employ all assistants
> for such period of time, not extending beyond the
> second fiscal year, as the best interest of the
> State may indicate. ..."

Neither the above rider nor any similar rider was at-
tached to any subsequent appropriation made to this or any
other named department prior to 1939.

Neither do such bills provide by specific appropriations made to any department for the employment of part-time employees, except in two instances where authority was given to the State Library to employ part-time assistant or assistants. Acts of the 1st Called Ses., 37th Leg., p. 200; Acts of the 3d Called Ses., 38th Leg., p. 263. It is probable that other similar appropriations were made prior to 1927; if so, we did not find them.

In the early appropriation bills passed at a time when there were but few departments and few employes, it was customary to make a specific appropriation for each position to be filled, but as the population of the State increased, not only new departments were created, but new duties were imposed upon the existing departments, necessitating more employees which resulted in a change of this policy.

We have been unable to find in any general departmental bill passed by the Legislature subsequent to 1899 and prior to 1939 where each salaried position in every department was itemized separately and a specific appropriation made to pay the salary of each individual employee. In all such former appropriation bills, the practice prevailed where provision was made for two or more employees doing the same character of work to make an appropriation substantially in one or the other of the following forms:

"Nine Assistant Tax Supervisors, $21,600;"
"Stenographers, eight at $1,500. each, $12,000;"
"Stenographers, none exceeding $1,350. per year, $18,900," or in some similar form.

Senate Bill No. 427 has singled out, specifically named, identified by number each and every salaried position in all of the departments, and for each has made a specific appropriation to pay the salary of the "person" filling a particular position. This is a radical departure from the practice followed for at least forty years by preceding legislatures.

The provision, heretofore quoted, and which first appeared in the general rider attached to the general appropriation bill of 1927, authorizing the employment of part-time employes and found in all subsequent bills of this kind passed prior to 1939, was entirely omitted from this bill. Nor is there to be found in its general rider any

Hon. George H. Sheppard, Page #6.

reference whatever to part-time employees. This was a departure from the practice established by the Legislature in 1927.

In addition to the general rider appearing at the end of the bill, there is attached to the specific appropriations made to some particular departments a special rider only applicable to that department. For instance, there is a rider on the appropriation made to the Board of Control which reads as follows:

"It is further provided that one-half of the appropriation items for full-time watchmen, yardmen, porters, and all items for full-time elevator operators in the State Board of Control appropriations may each be converted into part-time positions."

No other provision of this kind appears elsewhere in the Act. Why was it inserted here? It evidently was intended to serve some purpose. The language used is significant and clearly expresses the legislative intent as to the positions named. These positions, like all other salaried positions provided for in the Act, are named, numbered and carry a specific appropriation for each position. Provision is made for numerous watchmen, yard-men, porters and elevator operators, only one of which, an elevator operator, is classed as a "part-time" position. All of the other positions referred to in the rider must be considered as "full-time" positions because they are so designated in the rider. It appears to us that the Legislature evidently intended by its reference to such positions as "full-time" positions that it considered all salaried positions named in the Act to be classified as such, unless it had otherwise provided by designating a particular position as a "part-time" one. The Legislature is presumed to have known exactly what was in the Act and that the usual rider carried, since 1925, in all previous acts of this character permitting heads of the respective departments to fill any salaried position by two or more employees had been omitted. It must have concluded that with such a provision out of the Act, the Board of Control could not hire part-time employees for the positions named unless the authority was specifically granted to it by a rider, except in the one instance of the part-time elevator operator, especially authorized elsewhere in the Act. If such was the construction of the

Hon. George H. Sheppard, Page #7.

Legislature as applied to the Board of Control, is it not
reasonable to assume that it so construed the Act in its
entirety?

In connection with what we have just said, we call your
attention to the fact that the Act makes, in addition to
the part-time elevator operator heretofore referred to,
numerous specific appropriations for part-time employees
in other departments. We believe practically all of such
appropriations are as follows:

State Board of Dental Examiners, item 2, "Secretary
part-time $1080;" Board of Insurance Commissioners Cas-
ualty Insurance Division Workmen's Compensation Section,
item 23, "additional help, part time, $600;" and again
in the Motor Vehicle Insurance Section of said Division,
item 12, "Additional Help, part-time, $800;" Bureau of
Labor Statistics, item 17, "Porter, part time, $360;"
Boxing and Wrestling Division, same Bureau, items 5, 6,
7, 8, four boxing deputies, part time, each $600;" also
items 9 and 10, "two (2) wrestling deputies, part time
each $600," and item 10, payable out of Boiler Inspection
Fund, "porter, part time, $360;" State Department of
Education, Board of Examiners Division, items 6 and 7,
"one part time clerk, $400," and "one part time clerk,
$200," also, in Division of Research and Statistics,
item 11, "part time and seasonal help, $1500;" Game,
Fish and Oyster Commission, items 11 and 12, "Two assis-
tant accountants, part time, each $900;" Texas State Parks
Board, item 13, "janitor, part time, $300;" Railroad Com-
mission, Motor and Transportation Division, item 15, "six
part time clerks at $52 each per month;" Oil and Gas Divi-
sion (near end of appropriation), item 3, "eight part
time clerks, none exceeding $52 per month;" item 4, "four
(4) part time clerks, none exceeding $37.50 per month;"
State Treasurer, "part time Clerk $900;" also, Stamp Tax
Division, "part time porter, $380."

The Act of 1939 makes specific appropriations to pay
salaries of only two classes of salaried employees, one it
classes as "part-time" and the other as "full-time." Those
listed above are definitely part-time employees. Some of
them are not expected to work full time each day, but only
a part thereof. They are not of the same class as those
heretofore provided for or authorized by a rider found in

the appropriations bills since 1925. Their positions are especially created by a specific appropriation made for that purpose. While the part-time employees authorized by such riders are paid from an appropriation made for a full-time position, which may be broken down at the discretion of a department head, and filled by two or more part-time employees whose combined salaries may not exceed the salary provided for the full-time employee in that position. Therefore, the part-time employees provided for by specific appropriations in all such appropriations bills since 1925 and prior to 1939 was intended by the Legislature to be cumulative of and in addition to those authorized by the rider found in such bills. But, in the Act of 1939 there is no such rider, hence there is no specific authorization for a department head to take a specific appropriation to pay one employee in a particular salaried position and pay his salary to two or more persons for performing the duties assigned to that position. Such employees may properly be classed as "half-time" employees.

The Legislature in 1927 is not presumed to have done a useless or unnecessary thing by attaching the part-time rider to the general appropriation bill. It was placed therein for a purpose. It evidently was of the opinion that a department head could not legally do what the rider authorized or permitted him to do, otherwise it would not have been inserted, thereby establishing a new policy of employment.

The present Legislature evidently intended to change that policy which had existed for the last twelve years, and to accomplish that purpose omitted the rider that established the policy; otherwise, it would have retained the rider in the Act.

In the general rider, attached to the present Act, there is found a provision which we believe to be significant, especially when considered in connection with the fact that each salaried position is specifically named, numbered and an appropriation made to pay the salary of the person employed for that particular position. This provision reads as follows:

"Salary Payments. No salary for which an appropriation is made herein shall be paid to any

Hon. George H. Sheppard, Page #9.

person unless such person actually discharges assign-
ed duties. Every month the head of each department
shall attach to the payroll for his department an
affidavit, under oath, stating that the persons
listed in said payroll actually performed the duties
for which they were being paid. The Comptroller
shall not issue warrants for the payment of salaries
listed on said payroll unless this affidavit is filed
with him. Each department head shall number con-
secutively the salaried positions in his department
for which an appropriation is made herein (either
out of the General Revenue Fund, fees, receipts,
special funds or out of other funds available for
use by said department) and opposite the number of
the position, he shall set out the title of the
position and the name of the person employed to
fill the same. This statement shall be filed with
the Comptroller, who shall, when issuing his war-
rant to any employee in payment of salary due said
employee, number the warrant with the same number
that is assigned to the position filled by said
employee. Every department head shall notify the
Comptroller in writing of any changes in personnel
in his department. This provision shall not apply
to seasonal help, and shall not prevent persons
drawing their salary warrants during authorized
vacation periods."

This provision makes it mandatory upon the head of a
department to list and number each salaried position in his
department; set out the title of the position and the name of
the person employed to fill the same; make affidavit to the
effect that the person so listed performed the duties for
which he was paid; and file same with the Comptroller.

It appears to us that the Legislature has by specifically
numbering, naming and making a specific appropriation for each
salaried position and then following the same with the strict
requirements enumerated in this rider that all such salaried
positions were intended to be filled by one person only, un-
less otherwise provided for in the Act, such as we have here-
tofore noted.

"An 'appropriation' has been defined as an
authority of the legislature, given at the proper
time and in legal form to the proper officers, to

Hon. George H. Sheppard, Page #10.

apply a distinctly specific sum from a designated fund out of the treasury, in a given year, for a specified object or demand against the state." 25 R.C.L. p. 396.

It is provided in Section 6, Article 8, of our Constitution that:

"No money shall be drawn from the treasury but in pursuance of specific appropriations made by law."

Our courts have not construed or defined the term "specific appropriations," insofar as we have been able to ascertain. The Supreme Court of Nebraska has defined that term, as used in an identical provision appearing in the Constitution of that State, to "mean a particular, a definite, a limited, a precise appropriation." State ex rel. Ensign v. Wallichs, 12 Neb. 407, 11 N.W. 860.

It seems to us that the Legislature has, by the Act under review, made a particular, definite, limited and precise appropriation for each and every salaried position provided for therein, and so circumscribed the same with restrictions, conditions and limitations as to preclude any position being filled by more than one person at the same time, or to permit the salary appropriated therefor to be divided between two persons working half-time or part-time thereat, unless otherwise specifically provided in the Act.

In view of the Legislative history of the general departmental appropriations bills passed by the Legislature since 1877; the legislative history of the "half-time" rider, appearing in all such bills since 1925; its omission from the present Act; the provisions, limitations, restrictions and conditions found in the special rider attached to the appropriation made to the Board of Control, and in the general rider; the fact that numerous specific appropriations were made to certain departments for part-time employees, and all other relevant facts and circumstances heretofore discussed, we are forced to the conclusion that your question should be answered in the negative.

We are advised by advocates of a contrary construction that individual members of the Legislature have stated that the authority to employ half or part time employees, by splitting an item of appropriation, was omitted from the present

bill inadvertently. Such expressions of opinion, however, cannot be used by this Department as a proper basis for construction of any legislative enactment. The intent of the Legislature in passing a law must be gleaned from the language of the Act itself -- from what the Legislature did, rather than from what it might have intended to, but did not, do -- by the application of well known and commonly understood rules of construction. In no instance may the meaning of a law, thus ascertained, be varied by information conveyed by individual legislators that, to their knowledge or in their opinion, a contrary meaning was intended. Interpretations reached by such methods would result in intolerable confusion and uncertainty in our laws.

Our answer is limited to the question submitted. We do not pass upon the question as to whether, under appropriations made to certain departments for contingent or other expenses, the heads of such departments may employ extra help and pay them out of such appropriation. That question is not before us.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Bruce W. Bryant*

Bruce W. Bryant
Assistant

BWB:pbp

APPROVED AUG 23, 1939

*Gerald C. Mann*

FIRST ASSISTANT
ATTORNEY GENERAL.

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN